☑ Original ☐ Dup 

CLERK'S OFFICE
A TRUE COPY
Sep 29, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* information about the location of the cellular telephones assigned call numbers as follows: Target Cell Phone 1: (872) 243-4797, whose service provided is AT&T Wireless, a wireless phone service provider headquartered in North Palm Beach, FL. | ) ) ) ) ) ) ) Case No. 23-M-477 (SCD) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____10-13-23_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Stephen C. Dries_____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for __30__ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____9-29-23 2:25 pm_____

*Judge's signature*

City and state: _____Milwaukee, WI_____ Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the following cellular devices assigned call numbers (referred to herein and in Attachment B as the "Target Cell Phone"): **Target Cell Phone 1: (872) 243-4797**, whose service provided is AT&T Wireless, a wireless telephone service provider headquartered in North Palm Beach, FL.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone 1, for the time period January 1, 2021, to the present:

    i.      Names (including subscriber names, usernames, and screen names);

    ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.      Local and long-distance telephone connection records;

    iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.      Length of service (including start date) and types of service utilized;

    vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone 1 for the period of January 1, 2022, to the present including:

  a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from Target Cell Phone 1, for a period of 30 days from the date of this warrant, including:

  i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

2

ii.     Source and destination telephone numbers;

iii.    Date, time, and duration of communication; and

iv.     All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which Target Cell Phone 1 will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

c.      Information about the location of Target Cell Phone 1 for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone 1 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii.      This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of Torion R. BROOKS, and others regarding violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition); 18 U.S.C. § 922(d)(10) (sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime); 18 U.S.C. § 933 (trafficking firearms); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of crime of violence or drug trafficking crime); 18 U.S.C. § 371 (conspiracy); and 18 U.S.C. § 1341 (mail fraud) between January 1, 2021, and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider to locate the things particularly described in these Warrants.

4

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Sep 29, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

information about the location of the cellular telephones assigned call numbers as follows: Target Cell Phone 1: (872) 243-4797, whose service provided is AT&T Wireless, a wireless telephone service provider headquartered in North Palm Beach, FL.

)
)
)
)
)
)
)

Case No. **23-M-477 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|

18 U.S.C. §922(a)(1)(A) Engaging in a Firearms Business without a License; 18 U.S.C. §922(g)(1) Unlawful Possession of Firearms and Ammunition; 18 U.S.C. §922(d)(10) Sale of a Firearm to a Person who Intends to Use it for a Felony or a Drug Trafficking Crime; 18 U.S.C. §933 Trafficking Firearms; 18 U.S.C. § 924(c) Possession of a Firearm in furtherance of Crime of Violence or Drug Trafficking Crime; 18 U.S.C. § 371 Conspiracy; and 18 U.S.C. § 1341 Mail Fraud

The application is based on these facts:

Please see attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

GABRIEL LOWRANCE   Digitally signed by GABRIEL LOWRANCE
Date: 2023.09.29 10:14:33 -05'00'

*Applicant's signature*

Gabriel Lowrance, Special Agent, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ TELEPHONE _____ *(specify reliable electronic means).*

Date: __9-29-23__

*Judge's signature*

City and state: __Milwaukee, WI__          Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR SEARCH WARRANT

I, Gabriel Lowrance, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for search warrant extensions under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers as follows: **Target Cell Phone 1: (872) 243-4797**, whose service provided is AT&T Wireless, a wireless telephone service provider headquartered in North Palm Beach, FL.

2.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition); 18 U.S.C. § 922(d)(10) (sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime); 18 U.S.C. § 933 (trafficking firearms); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of crime of violence or drug trafficking crime); 18 U.S.C. § 371 (conspiracy); and 18 U.S.C. § 1341 (mail fraud), are being committed or will be committed by Torion R. BROOKS and others known and unknown.

3.      The Court has jurisdiction to issue the proposed warrants because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

4.      Because these warrants seek the prospective collection of information, including cell-site location information, that may fall with the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested

warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrants therefore include all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

5. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since January 2020. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to employment with ATF, I served as a police officer with the Robinson Police Department in Illinois and the Lake Havasu City Police Department in Lake Havasu City, Arizona.

6. As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

7. Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

8. I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the way individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to

2

conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

9.      Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes.  Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

10.      I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

11.      I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

12.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is

3

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

## TORION BROOKS'S PURCHASE OF FIREARM PARTS

13.     On August 24, 2023, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Gabriel Lowrance initiated a case related to a complaint made to the Milwaukee Police Department by CBC Industries, a business located in North Charleston, South Carolina. CBC Industries is a manufacturer of firearms and firearms accessories which are sold online via their website.

14.     The evidence below shows that Torion R. BROOKS is likely committing credit and mail fraud to purchase AR-15 firearm parts, assemble fully functional firearms, and sell the firearms without the proper federal firearms license.

15.     The complaint from CBC industries concerned approximately 29 attempted and 2 completed online purchases of AR-15 firearm parts, which totaled approximately $35,000.00 of AR-15 upper receivers and other AR-15 accessories. All of the purchases were through CBC's website, and several of the orders were placed under the name Torion R. BROOKS or through telephone numbers associated to Torion BROOKS.

16.     The purchases took place between 7/27/2023 and 8/22/2023. Although BROOKS was the buyer for all the AR-15 parts and accessories, the purchases were flagged as possibly fraudulent because the billing addresses were different from the delivery addresses. CBC's records showed billing addresses from approximately fourteen (14) different states within the United States and shipping addresses at the following locations: 1526A W. Congress Milwaukee, WI; 4710 N. 30th St, Milwaukee, WI; and 3219 N 46th St, Milwaukee, WI.

4

17.     In two of the attempted purchases, CBC communicated the user of the email address, "billyj1730@gmail.com." In an email communication dated 7/24/2023, CBC Industries requested a front and back photo of identification to verify the purchaser's identity to combat fraudulent purchases and activity. In response, the user of billyj1730@gmail.com responded by sending front and back photos of an Arizona driver's license for Torion R. BROOKS (DOB: 2000). In an unrelated Milwaukee Police Department contact, BROOKS said his address was 19721 Emperor Blvd Queen Creek, AZ, 85142. Your affiant also confirmed BROOKS' address after reviewing Arizona driver's license records.

18.     Two of the purchases were completed and delivered to addresses in Milwaukee, WI. The first completed transaction was an order of 6 AR-15 upper receivers, which was placed on or about 7/24/2023 and totaled approximately $990.00. These items were shipped by CBC industries via Federal Express to Torion BROOKS at 1526A W. Congress, Milwaukee, WI, and were delivered and signed for on 7/31/2023. When an AR-15 upper receiver component is paired with an AR-15 lower receiver, the items may readily be converted to a working firearm.

19.     The second completed order from CBC Industries was placed on or about 8/18/2023, and five (5) items related to AR-15 and AR-15 parts and accessories, totaling approximately $1,170.00, were delivered to Torion BROOKS at 3219 N 46th St, Milwaukee, WI.

**TARGET CELLPHONE USAGE**

20.     The cellphone number **872-243-4797 (TARGET CELL PHONE 1)** is a number known to your affiant because it is associated with Torion BROOKS as it was a telephone number he used when purchasing items from CBC Industries. Also, databases available to law enforcement show that this cellphone number is associated with BROOKS. Your affiant

5

reviewed AT&T telephone toll and subscriber records related to the phone number **872-243-4797 (TARGET CELL PHONE 1).** The information was obtained via federal grand jury subpoena. Subscriber information for the phone number indicated the phone number to be registered "Bradford Brown". The contact home email was antdbrooks@gmail.com.

21.     Within the toll information, approximately one-hundred sixteen (116) phone calls were made or received by **872-243-4797 (TARGET CELL PHONE 1)** to various Federal Firearms Licensees (FFLs) in various states between 5/1/2023 and 8/30/2023. The phone calls included calls to CBC Industries.

22.     Your affiant reviewed jail phone calls from Fox Lake Correctional Center, located in Fox Lake, WI. On 7/29/2023 a phone call is made to the phone number **872-243-4797 (TARGET CELL PHONE 1)**. Your affiant knows this phone number to be associated Torion BROOKS through CBC Industries records, and databases available to law enforcement. Your affiant recognized the voice placing the call as "Cortez Brooks (hereafter referred to as Cortez)," because Cortez Brooks identifies himself during previously reviewed jail calls. A male voice answers the call which sounds like that of an individual Cortez referred to as "Torion" in previously reviewed jail calls. Because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls, and the cellphone number **872-243-4797 (TARGET CELL PHONE 1)** is associated with Torion BROOKS, the affiant believes the person on the call is Torion BROOKS.

23.     During the call, BROOKS stated he is "building these guns" and has learned how to build the AR-15 rifles. BROOKS also spoke about other firearms he was building and described them as "little ones" and "real small", leading your affiant to suspect he could also be speaking about AR-15 pistols. During the call, BROOKS described the firearms "ghost guns"

and described them as "big enough" to fit under a shirt. Within the same call, Cortez asked BROOKS if he is "making those mother fuckers yourself" or "breaking them down." BROOKS stated he is "making the mother fuckers" and is getting the parts "offline." BROOKS stated if he sells them, he is getting $1,500 and they do not cost him more than $300-$400. BROOKS stated at the time he was not trying to sell them and was looking to "stock up on my shit". BROOKS further stated he has been spending his time "putting them together", leading your affiant to believe he is discussing converting AR-15 receivers into fully functioning firearms. Your affiant is aware that the slang term "ghost gun" describes a privately made firearm which has no serial numbers. These privately manufactured firearms have become sought after by those engaged in criminal activity because they are difficult for law enforcement to trace back to a specific possessor.

24.     Within the same call, Cortez also instructs BROOKS to "fuck with" an unknown individual. Cortez asks if "they" are five inches. BROOKS stated they are the same size as a "micro draco" and shoot 7.62 and 5.56 and the same bullet as an "AK".  Your affiant knows 7.62 and 5.56 to be calibers of ammunition that can be fired by an AR-15.

25.     Within the same call, Cortez and BROOKS discuss apparent narcotics trafficking. Cortez stated he wished BROOKS still had the "ice connect." Your affiant is aware through training and experience "ice" to be a term to reference methamphetamine.  Your affiant also knows the term "connect" to be a term to reference a source for narcotics. BROOKS stated he would attempt phone calls to obtain more information.  Cortez also asked BROOKS about an individual by the name "Rocco." BROOKS stated he had previously gone "all the way out of town" to go get "some shit" for "Rocco." BROOKS described this as being "hours away."

Cortez asked if BROOKS knew Rocco's "plug" Your affiant knows "plug" to be a term to reference a source of narcotics.

26.     During this same call, Cortez and BROOKS discuss where BROOKS is in Milwaukee. BROOKS stated he is on 14th near Atkinson. Your affiant knows BROOKS to associate with individuals who have previously resided at 3900 N. 14th St. in Milwaukee which is approximately two blocks north of the intersection of 14th St and Atkinson St. in Milwaukee. BROOKS also stated he is near 29th and Burleigh.  Your affiant also knows BROOKS to have used the address 3219 N 46th St, Milwaukee, WI for delivery of firearm parts and accessories. Your affiant knows this address is near the intersection of 29th St. and Burleigh St in Milwaukee. The name "Todrian Franklin" also used for attempted orders is known to your affiant to use the address of 3020 N 29th St, Milwaukee, WI (Wisconsin DL) which is near the intersection of 29th St and Burleigh St, in Milwaukee.

27.     On 8/20/2023 Cortez called BROOKS at **872-243-4797 (TARGET CELL PHONE 1**). Again, because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls, and the cellphone number **872-243-4797 (TARGET CELL PHONE 1)** is associated with Torion BROOKS, the affiant believes the person on this call is Torion BROOKS.

28.     During the call, BROOKS tells Cortez he has "been putting these mother fuckers together" and is "waiting on a package right now." Your affiant is aware of a delivery from CBC Industries of firearm parts and accessories was delivered to Torion BROOKS at 3219 N 46th St, Milwaukee, WI on 8/20/2023.  BROOKS stated again he has been "building these mother fuckers" and has acquired tools, drills, and does not have to go into the "store" anymore. BROOKS stated he has everything he needs, and he was "just sitting in the crib doing that shit."

8

29.    Within the same call, Cortez asked BROOKS if BROOKS had contacted an unknown individual. BROOKS stated he has not spoken to the individual in approximately one week. BROOKS further stated, "I got 30 of them things for you again." Your affiant is aware at the time of the phone call BROOKS had made approximately thirty attempted orders of firearms parts and accessories from CBC Industries.

30.    Within the same call, Cortez asked when BROOKS will be able to visit him. BROOKS stated he does not have a car and Cortez offered to get BROOKS a rental car. BROOKS stated he is waiting on "my package" and indicated he is at "my homie crib up here on Burleigh." Your affiant is aware 3219 N. 46th St to be approximately two (2) blocks north of W. Burleigh St in Milwaukee, WI. Your affiant knows Todrian FRANKLIN, a known CBC purchaser, is known to have a Wisconsin driver's license address registered at 3020 N. 29th St, Milwaukee, WI. Your affiant knows this address to be just south of the intersection of 29th St. and Burleigh St. in Milwaukee.

31.    Within the same call, BROOKS stated he is trying to sell one (1) "of them mother fucking things". When asked by Cortez how much they are being sold for, BROOKS stated the "Lowest I will take is twelve." Cortez asked why BROOKS does not "pull up on dude" to which BROOKS stated individuals "act like they want to buy". BROOKS also stated he knows an individual who already had "the lower" and wanted the "upper part." Your affiant is aware the orders from CBC Industries by BROOKS included AR-15 upper receiver components and when paired with a lower receiver, the items can be easily converted into a firearm.

32.    On 8/20/2023 a Cortez placed a second phone call to BROOKS who was using **872-243-4797 (TARGET CELL PHONE 1)**. Again, because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls,

and the cellphone number **872-243-4797 (TARGET CELL PHONE 1)** is associated with Torion BROOKS, the Affiant believes the person on the call is Torion BROOKS.

33.     BROOKS stated he "just got my mother fucking package."  Your affiant is aware, BROOKS received a package from CBC Industries on the same date at 3219 N 46th St, Milwaukee WI.

34.     Your affiant reviewed a jail call which occurred on 1/11/2023, in which Cortez called BROOKS who was using **872-243-4797 (TARGET CELL PHONE 1).** Again, because the person on the call is referred to as "Torion" in other jail calls, the person has a similar voice to "Torion" in the other jail calls, and the cellphone number **872-243-4797 (TARGET CELL PHONE 1)** is associated with Torion BROOKS, the affiant believes the person on the call is Torion BROOKS.

35.     During this call BROOKS stated he is in an airport and has been "up for 24 hours" and is on his way to "Houston" to go grab that "drank."  Your affiant knows "drank" to be a term to reference a drink containing codeine syrup.  Both individuals discuss "bars" and "percs".  Your affiant knows these terms to be a reference to prescription opioid pills.  BROOKS stated he "got a guy" that goes to pharmacies in "small ass towns" for "percs."  Cortez asks BROOKS to "lock in" the individual.  BROOKS stated he already has the individual "locked in."  Cortez inquired about "suboxone strips."  Your affiant knows these to be prescription opioids which come in strip form.  Cortez and BROOKS discuss how to obtain opioids and who to sell them throughout the phone call.  Additionally, both Cortez and BROOKS discuss "dog" which is "untouched."  Your affiant knows "dog" to be a term to reference heroin.  BROOKS stated he had previously taken "Bo" a "sample of that shit."  Cortez and BROOKS then discuss prices for "dog" and who they can sell it to.  Cortez and BROOKS both discuss an individual they have

both contacted.  Cortez stated he does not want BROOKS "dealing and dabbling" and wants others to do it.

### BROOKS, KEVIN WILLIAMS, and JAYLIN ALEXANDER

36.     Your affiant reviewed Milwaukee Police Department reports related to an armed robbery complaint involving Jaylin K. ALEXANDER (B/M, dob 1998, 10282 W. Fountain Ave, #1300, Milwaukee WI) as a suspect. The armed robbery took place in April of 2022 near 7151 W. Beckett Milwaukee, WI. ALEXANDER is alleged to have robbed the victim, an individual, while armed with what the victim described as an "M4 style rifle." The victim also identified a second individual as "Anthony" who was armed with what the victim described as a "black handgun."  Both individuals used vehicles to box the victim vehicle in, and allegedly stole a wallet from the victim's vehicle.

37.     Your affiant reviewed Milwaukee (WI) Police Department (MPD) reports related to ALEXANDER'S arrest warrant for armed robbery, and a search warrant at 10282 W. Fountain Ave, #1300, Milwaukee, WI, which were executed on 7/19/2023.  During this incident, ALEXANDER was observed through a window by MPD inside the residence and entering the southeast bedroom. ALEXANDER was arrested as he exited the residence and was in possession of a cellphone and keys to the residence at 10282 W. Fountain Ave, #1300.  MPD officers would later use the keys found on ALEXANDER's person to make entry into the residence to conduct the search warrant. The cellphone on ALEXANDER's person was one (1) blue Apple iPhone, unknown model, Milwaukee Police Department inventory # 23023401, Item #13 (Target Cell Phone #1).

38.     Officers executed a search at the residence.

11

39.     In the northwest bedroom, officers located bags of suspected cannabis and two (2) Wisconsin ID cards for ALEXANDER in a black tote. Officers also located ALEXANDER's diploma, and pieces of mail addressed to ALEXANDER to include a WE energies bill for 10282 W Fountain Av #1300. It should be noted, other pieces of United States mail were in the kitchen and the living room of the residence bearing the Fountain Ave address for ALEXANDER.

40.     In the southeast bedroom, officers found a wallet containing cards for Anthony A. PUGH Jr. (B/M DOB 1997), a social security card, and United States Postal Service Priority mail for PUGH.

41.     In the southeast bedroom, police recovered an un-marked black and green AR-15 pistol equipped with a drum style magazine, a Century Arms AK pistol, a Smith & Wesson revolver, and ammunition. In the northwest bedroom, MPD located suspected marijuana, Tetrahydrocannabinol (THC) vape cartridges, and suspected "Magic Psilocybin Mushrooms." Throughout the living room, kitchen, and the two bedrooms, officers located packaging materials, a digital gram scale, plastic sandwich bags/vacuum sealed bags, and a large quantity of U.S. Currency. The recovered items indicate street-level narcotics distribution, as well as using the residence to manufacture, store, and sell narcotics.

42.     The firearms and illegal narcotics that were in the residence were visible and accessible to any person who entered the residence. The entire residence was open and accessible to ALEXANDER or Pugh, and their identifiers were in several places within the residence. The Affiant is aware that drug users and armed robbers will often keep their firearms and illegal narcotics in their residences and within proximity to each other for protective reasons.

43.     Your affiant reviewed MPD reports, photos and inspected the AR-15, which was recovered during the search warrant at ALEXANDER'S residence, and it appeared to be similar

12

in size and caliber as the ones described by BROOKS in previously reviewed jail phone calls, and AR-15 parts that he ordered from CBC.

## CONCLUSION

44. BROOKS used **TARGET CELL PHONE 1** to commit fraud and illegal firearms activity, and the location data that will be obtained from this warrant will be used by law enforcement to obtain location information for BROOKS that will assist in identifying BROOKS' residences, coconspirators, and other locations where his illegal activities are being conducted.

## CELLSITE DATA

45. Based on my training and experience, I know that AT&T and T-Mobile (collectively, the "Service Provider") can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

46. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information

13

about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

47.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

14

## Subscriber Information

48.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

49.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

50.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

51.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may

15

be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

52.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

53.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

16

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the following cellular devices assigned call numbers (referred to herein and in Attachment B as the "Target Cell Phone"): **Target Cell Phone 1: (872) 243-4797**, whose service provided is AT&T Wireless, a wireless telephone service provider headquartered in North Palm Beach, FL.

17

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

  To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone 1, for the time period January 1, 2021, to the present:

  i. Names (including subscriber names, usernames, and screen names);

  ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii. Local and long-distance telephone connection records;

  iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v. Length of service (including start date) and types of service utilized;

  vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records; and

    ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by Target Cell Phone 1 for the period of January 1, 2022, to the present including:

        a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

  b.    Information associated with each communication to and from Target Cell Phone 1, for a period of 30 days from the date of this warrant, including:

    i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

2

ii.      Source and destination telephone numbers;

iii.     Date, time, and duration of communication; and

iv.      All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which Target Cell Phone 1 will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

c.      Information about the location of Target Cell Phone 1 for a period of 30 days during all times of day and night.  "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government.  In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of Target Cell Phone 1 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

3

ii.	This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.	Information to be Seized by the Government

All information described above in Section I that will assist in the investigation of Torion R. BROOKS, and others regarding violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license); 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition); 18 U.S.C. § 922(d)(10) (sale of a firearm to a person who intends to use it for a felony or a drug trafficking crime); 18 U.S.C. § 933 (trafficking firearms); 18 U.S.C. § 924(c) (possession of a firearm in furtherance of crime of violence or drug trafficking crime); 18 U.S.C. § 371 (conspiracy); and 18 U.S.C. § 1341 (mail fraud) between January 1, 2021, and the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider to locate the things particularly described in these Warrants.

4